```
                    UNITED STATES DISTRICT COURT

                          DISTRICT OF IDAHO

                            ----oo0oo----


ALAN PESKY and WENDY PESKY,          NO. CIV. 1:10-186 WBS

         Plaintiffs,
                                     MEMORANDUM AND ORDER RE:
     v.                              MOTION TO DISMISS

UNITED STATES OF AMERICA,

         Defendant.
_____/

                            ----oo0oo----
```

Plaintiffs Alan and Wendy Pesky brought suit against the United States of America seeking a refund for taxes, penalties, and interest assessed against them for the 2003 and 2004 tax years. After a stay of the action and the filing of the First Amended Complaint, the United States filed counterclaims against the Peskys. The Peskys now seek to dismiss the United States' counterclaims for civil fraud penalties due to conservation easement fraud and Schedule C expense fraud pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.  Factual and Procedural Background

Alan and Wendy Pesky are husband and wife.  The Peskys brought suit against the United States in April 2010 seeking recovery of taxes, penalties, and interest assessed by the United States for the 2003 and 2004 tax years.  (Docket No. 1.)  The Peskys then moved for partial summary judgment against the United States, but the motion was denied.  (Docket No. 54.)  On September 20, 2011, the United States moved to stay the action under 26 U.S.C. § 7422(e) because the Internal Revenue Service ("I.R.S.") issued new statutory notices of deficiency against the Peskys for the 2003 and 2004 tax years.  (United States' Mot. to Stay (Docket No. 58).)  The new notices of deficiency included adjustments to income and expenses as to both Alan and Wendy Pesky, but the notice to Alan Pesky included a civil fraud penalty under 26 U.S.C. § 6663 and additions to tax pursuant to § 6662.  (Id. at 2, Ex. B.)  The I.R.S. also allegedly issued a statutory notice of deficiency against the Peskys for the 2002 tax year.  (Id. at 2; FAC ¶¶ 15-19.)

The court stayed the action pursuant to 26 U.S.C. § 7422(e) on October 13, 2011.  (Docket No. 61.)  After an oral request by the parties during a telephonic status conference on September 17, 2012, the court lifted the stay.  (Docket No. 71.)  The Peskys filed their First Amended Complaint on September 24, 2012.[1]  (Docket No. 72.)  The United States filed its Answer to

---

[1] The Peskys appear to have declined to file a petition for redetermination in the Tax Court within the statutory period, thus giving the United States the option of filing a counterclaim.  See 26 U.S.C. § 7422(e) ("If the Secretary prior to the hearing of a suit brought by a taxpayer in a district court . . . mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter

the First Amended Complaint and its Counterclaim against the Peskys on October 9, 2012.  (Docket No. 74.)

The Counterclaim alleges that, in 1993, Alan Pesky began negotiations to acquire a piece of undeveloped property in Blaine County, Idaho ("Ketchum Property").  (Countercl. ¶¶ 13-14.)  The Ketchum Property is adjacent to another property where Ernest Hemingway's last home stood ("Hemingway Property").  (Id. ¶ 6.)  Mary Hemingway is alleged to have granted an easement to the owners of the Ketchum Property in 1985 ("Hemingway Easement"), though the easement was arguably legally defective.  (Id.)  Upon Mrs. Hemingway's death, The Nature Conservancy ("TNC") allegedly became the owner of the Hemingway Property and disputed the Ketchum Property owners' right to access the Ketchum Property via the Hemingway Easement.  (Id. ¶¶ 7-8.)

Paul MacCaskill and John Hagestad ("M&H"), the owners of the Ketchum Property at the time, allegedly sued TNC to reform the Hemingway Easement and obtain access to the Ketchum Property.  (Id. ¶ 12.)  TNC allegedly responded to the lawsuit by purchasing an option to buy the Ketchum property.  (Id. ¶ 15.)

The United States alleges that Alan Pesky, through his attorney, negotiated and eventually engaged in a transaction with TNC whereby the Peskys would receive the option to buy the Ketchum Property and a perfected easement for a driveway over the

---

of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed . . . . If the taxpayer files a petition with the Tax Court, the district court . . . shall lose jurisdiction of the taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court . . . . If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit . . . .").

Hemingway Property. (Id. ¶¶ 15-36.) In exchange, Alan Pesky is alleged to have given TNC payment as well as a conservation easement that limited development of the Ketchum Property to a single home and related buildings. (Id.)

The United States further alleges that Mr. Pesky attempted to structure the transaction to hide its quid pro quo nature so that he could claim a charitable deduction based on the conservation easement. (Id. ¶¶ 27-30.) Specifically, the United States alleges that the negotiations were for a single transaction, but that the transaction was broken up into separate documents. (Id. ¶ 20.) In the Assignment Agreement, in exchange for $50,000 and the Peskys' agreement to limit the height of any structures on the property ("Easement Agreement"), TNC allegedly agreed to grant the Peskys the option to purchase the Ketchum Property from M&H and agreed to support Mr. Pesky's application for driveway approval with the local authorities ("Driveway Easement"). (Id. Exs. 20, 22-24.) In a separate document called the Pledge Agreement, Mr. Pesky agreed to pay $400,000 to TNC and convey within five years "all right to develop or improve the [Ketchum] Property except for one single-family residence and such accessory buildings as are allowed under applicable zoning." (Id. ¶ 31, Exs. 21, 25.)[2]

Mr. Pesky is alleged to have consulted an accounting firm as early as February 1993 to discuss the effective profit he would make by selling the Ketchum Property once the charitable

---

[2] The Pledge Agreement was allegedly secured by a liquidated damages clause and by Alan Pesky granting deeds of trust to TNC. (Countercl. ¶¶ 31, 35, Exs. 25, 26.)

4

deduction for the conservation easement was factored in.  (Id. ¶ 38.)  The United States also alleges that, at Mr. Pesky's insistence, the Pledge Agreement was never recorded, (id. ¶ 33), and that Mr. Pesky attempted to keep the Pledge Agreement secret from outside parties, including city officials and even appraisers of the property.  (Id. ¶¶ 30-34, 56-63, 66, 105-10, Exs. 35-36, 39, 67-71.)

Mr. Pesky allegedly exercised his option to purchase the Ketchum Property for $1.6 million, (id. ¶ 36, Exs. 6, 27), and TNC is alleged to have granted Mr. Pesky an Amended Driveway Easement, (id. ¶ 50, Ex. 34).  Mr. Pesky is alleged to have begun marketing the property soon after obtaining the Amended Driveway Easement and eventually sold the property for around $7 million, (id. ¶¶ 65, 97, Ex. 61).  After extending the time to comply with the Pledge Agreement, (id. ¶¶ 70, 76, Exs. 41, 45),  Mr. Pesky allegedly complied with the terms of the Pledge Agreement by granting a conservation easement to TNC in March 2002, just days before selling the property, (id. ¶ 96, Ex. 60).

Mr. Pesky allegedly reported a charitable deduction of $3 million--the appraised value of the conservation easement–-on his 2002, 2003, and 2004 tax returns.  (Id. ¶¶ 112, Ex. 74.) When the I.R.S. began an audit of Mr. Pesky's tax deductions, he is alleged to have withheld responsive documents, including the Pledge Agreement.  (Id. ¶¶ 113-31.)[3]

---

[3]   The scope of the I.R.S.'s investigation was hotly contested and led to multiple petitions in this court.  See Pesky v. United States, Civ. No. 1:10-06789 EJL CWD (Dist. Idaho 2010) (Peskys' petition to quash an I.R.S. summons); United States v. Pesky, Civ. No. 1:10-00143 EJL (Dist. Idaho 2010) (United States'

On the basis of these facts, the United States brings four counterclaims: (1) conservation easement fraud under 26 U.S.C. § 6663 against Mr. Pesky; (2) Schedule C expense fraud under § 6663 against Mr. Pesky; (3) penalties for failure to file within the time proscribed by law against both Mr. and Mrs. Pesky; and (4) failure to pay assessed amounts under § 6663 or, alternatively, § 6662 against both Mr. and Mrs. Pesky. (Id. ¶¶ 149-79.) The Peskys now move to dismiss the first and second counterclaims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

II.  Discussion

To survive a motion to dismiss, a claimant must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a

---

petition to enforce an I.R.S. summons); United States v. Richey, Civ. No. 1:08-00452 EJL (Dist. Idaho 2008) (United States' petition to enforce an I.R.S. summons), consolidated with Civ. No. 1:08-10-00143. In one of the suits, the Ninth Circuit overturned the district court's holding that the entire work file of Mark Richey, the appraiser of the conservation easement, was protected by the attorney-client privilege and by the work-product doctrine, thus remanding the case back to the district court for an in camera examination of the materials summoned by the I.R.S. in order to determine which documents, if any, were protected from disclosure. United States v. Richey, 632 F.3d 559, 566-68 (9th Cir. 2011).

1  claimant has stated a claim, the court must accept the
2  allegations in the complaint as true and draw all reasonable
3  inferences in favor of the claimant.  Scheuer v. Rhodes, 416 U.S.
4  232, 236 (1974), overruled on other grounds by Davis v. Scherer,
5  468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

    A.  Civil Fraud Penalty under § 6663

             Section 6663 provides that "[i]f any part of any
underpayment of tax required to be shown on a return is due to
fraud, there shall be added to the tax an amount equal to 75
percent of the portion of the underpayment which is attributable
to fraud."  26 U.S.C. § 6663(a).

             In the context of the seventy-five percent penalty of §
6663,[4] "fraud is intentional wrongdoing on the part of the
taxpayer with the specific intent to avoid a tax known to be
owing."  Bradford v. Comm'r, 796 F.2d 303, 307 (9th Cir. 1986)
(quoting Akland v. Comm'r, 767 F.2d 618, 621 (9th Cir. 1985)).
To establish liability for the civil fraud penalty, "the
Government must establish: (1) a knowing falsehood; (2) an intent
to evade taxes; and (3) an underpayment of tax."  Considine v.
United States, 683 F.2d 1285, 1286 (9th Cir. 1982).

             The government "must prove fraud by clear and
convincing evidence, but intent can be inferred from strong
circumstantial evidence."  Bradford, 796 F.2d at 307 (quoting

---

[4] The Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085 (1986), amended 26 U.S.C. § 6653(b) to increase the civil penalty for fraud from fifty percent to seventy-five percent.  Cooley v. Comm'r, 87 T.C.M. (CCH) 1025, 2004 WL 406756, at *7 n.4 (2004).  The Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106 (1989), subsequently removed the civil penalty for fraud from § 6653(b) and replaced it with § 6663.  Id.

7

Akland, 767 F.2d at 621 (internal citations omitted)); see 26 U.S.C. § 7454(a) ("In any proceeding involving whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect to such issue shall be upon the Secretary."). "Because fraudulent intent is rarely established by direct evidence, this court has inferred intent from various kinds of circumstantial evidence. These 'badges of fraud' include: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities." Id. (internal citations omitted).

### 1. Conservation Easement Fraud

"Section 170(a) of the Internal Revenue Code of 1954 allows a deduction for charitable contributions . . . ." Collman v. Comm'r, 511 F.2d 1263, 1266 (9th Cir. 1975); see 26 U.S.C. § 170(a). "A charitable contribution is a gift of property to a charitable organization, made with charitable intent and without the receipt or expectation of receipt of adequate consideration." Mitchell v. Comm'r, 138 T.C. No. 16, 2012 WL 1109342, at *4 (2012) (citing Hernandez v. Comm'r, 490 U.S. 680, 690 (1989); United States v. Am. Bar. Endowment, 477 U.S. 105, 116-18; 26 C.F.R. § 170A-1(h)(1)-(2)). "While a taxpayer is generally not allowed a charitable deduction for a gift of property consisting of less than an entire estate in that property, an exception is made for a 'qualified conservation contribution.'" Id.; see 26 U.S.C. § 170(f)(3)(A), (f)(3)(B)(iii), (h).

Here, the United States alleges that Alan Pesky

1  underpaid his taxes by fraudulently deducting the full value of a
2  conservation easement as a charitable deduction when the easement
3  was obtained through a quid pro quo transaction with TNC.
4  (Countercl. ¶¶ 151-53.)  The court has examined over ninety
5  exhibits that the United States attaches in support of its
6  counterclaims.  See generally United States v. Corinthian
7  Colleges, 655 F.3d 984, 999 (9th Cir. 2011) (noting that a court
8  may "consider materials that are submitted with and attached to
9  the Complaint" on a Rule 12(b)(6) motion to dismiss).  In its
10 counterclaims and attached exhibits, the United States identifies
11 key documents and communications between the various people
12 alleged to have participated in or been affected by the fraud.
13           For example, in support of its allegations that the
14 Assignment Agreement and Pledge Agreement were part of a single
15 transaction, the United States attaches internal memoranda shared
16 with Mr. Pesky that detail the negotiations between TNC and the
17 Peskys' attorneys.  (See id. Exs. 10-16.)  The memoranda note
18 that both the Assignment Agreement and Pledge Agreement were
19 drafted around the same time, (id. Ex. 10), discuss the terms of
20 the Assignment Agreement and the Pledge Agreement in the same
21 memoranda, (id. Ex. 11), as well as have a subject line that
22 refers to the "Nature Conservancy Transaction" in the singular,
23 (id. Exs. 11, 13).  The Pledge Agreement notes that it "arises
24 out of" and is "integral with" the Assignment Agreement, (id. Ex.
25 25), and the minutes from a zoning board meeting include a
26 statement from Mark Elsbree, a TNC employee, that TNC "had agreed

to grant Mr. Pesky a reformed easement,[5] conditioned upon the fact that he can build one house (and one guest house) there," (id. ¶ 46, Ex. 32).

The United States also includes specific factual allegations and exhibits regarding Mr. Pesky's intent to defraud, such as attempts to keep the Pledge Agreement hidden from city officials, real estate agents, and appraisers, (id. ¶¶ 57-63, 66, 105-09, Exs. 35-36, 39, 67-71), as well as his refusal, through his attorney, to share the Pledge Agreement and other documents with the I.R.S., (id. 116-47, Exs. 76-95). When questioned on the subject, Mr. Pesky is alleged to have claimed a near total lack of recall as to anything related to the Pledge Agreement. (Id. ¶ 148.)

The Peskys argue - and the United States does not contest - that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to the United States' counterclaims for fraud under § 6663. See Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (stating that averments of fraud must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong" (internal quotation marks and citations omitted)); Gaughen v. United States, Civ. No. 1:09-2488, 2011 WL 292019, at *2-3 (M.D. Penn. Jan. 27, 2011) (applying Rule 9(b) to the government's answer in a suit by a taxpayer seeking a Rule 12(c)

---

[5] The "reformed easement" here could reasonably be interpreted as referring to the Driveway Easement contained in the Assignment Agreement.

10

1  judgment on the pleadings for a refund of § 6663 penalties).  But
2  see Payne v. United States, 247 F.2d 481, 485 (8th Cir. 1957)
3  ("We should doubt that [Rule 9(b)] has any application to a
4  complaint in a suit to collect assessed tax deficiencies and
5  fraud penalties, of which the taxpayer has administratively been
6  given due notice of determination, assessment, and demand for
7  payment.").

8         Assuming, arguendo, that the heightened pleading
9  requirements of Rule 9(b) apply to the United States'
10 counterclaims for civil fraud penalties under § 6663, the United
11 States has more than adequately pled facts of particular
12 misconduct regarding the allegedly fraudulent charitable
13 deduction so that the Peskys can adequately defend against the
14 charge.  See Vess, 317 F.3d at 1106.

15        The Peskys argue that the United States' allegations
16 misconstrue the nature of the transactions at issue and that a
17 close reading of the exhibits forecloses any plausible
18 possibility of fraud by Mr. Pesky.  While the court "'need not
19 accept the allegations as being true'" when "material is attached
20 to the complaint which refutes the allegations contained in the
21 complaint," Hores v. Mason, 1999 WL 674588, at *4 (Dist. Idaho
22 July 19, 1999) (quoting Roth v. Garcia Marquez, 942 F.2d 617, 625
23 (9th Cir. 1991)), the Peskys ask the court to go far beyond this
24 rule and adopt their interpretation of the documents.  Such an
25 approach is inappropriate in ruling on a Rule 12(b)(6) motion
26 since the court must draw all reasonable inferences in favor of
27 the claimant.  Scheuer, 416 U.S. at 236, overruled on other
28 grounds by Davis, 468 U.S. at 191.

For example, the Peskys argue that exhibits documenting the negotiations show that the Peskys and TNC never negotiated for a one home site restriction in exchange for the option to buy the Ketchum Property, but instead only contemplated a three home site restriction. (See Countercl. Exs. 5, 8, 9.) However, the fact that the attached exhibits may show that the Peskys and TNC discussed alternative arrangements is not inconsistent with the United States' allegations. The fact that the Peskys and TNC may have discussed alternatives during their negotiations does not preclude the inference that they eventually settled upon a one home site restriction as part of the exchange for the option to buy the Ketchum property.

Accepting as true all material allegations in the counterclaims and drawing all reasonable inferences in favor of the United States, the United States has adequately pled a counterclaim for a civil penalty under § 6663 based on the Pesky's allegedly fraudulent charitable deduction for the value of the conservation easement. Thus, the court will not dismiss the United States' first counterclaim.

2. Schedule C Fraud

"In general, section 162 allows deductions for ordinary and necessary expenses of carrying on a trade or business." Shelton v. Comm'r, 72 T.C.M. (CCH) 807, 1996 WL 544608, at *4 (1996); 26 U.S.C. § 162(a). "As used in section 162(a), 'ordinary' has been defined as that which is 'normal, usual, or customary' in the taxpayer's trade or business." Id. (citing Deputy v. DuPont, 308 U.S. 488, 495 (1940)). "'Necessary' has been construed to mean 'appropriate' or 'helpful' in the

12

development of the taxpayer's business." Id. (citing Welch v. Helvering, 290 U.S. 111, 113 (1933)).  "Unless expressly provided for, section 162 prohibits deductions for personal, living, or family expenses." Id.  In an action to impose the civil penalty of § 6663, "fraudulent understatement of income may be established by overstatement of Schedule C expenses." Cooley v. Comm'r, 87 T.C.M. (CCH) 1025, 2004 WL 406756, at *8 (2004) (citations omitted).

In stark contrast to its allegations regarding the conservation easement deduction, the United States' pleadings are conspicuously devoid of factual allegations regarding fraudulent business deductions on the Peskys' Schedule C forms.  The Counterclaim includes formulaic allegations of liability under § 6663, (Countcl. ¶ 158), and alleges that Alan Pesky wrongly "claimed expenses incurred by himself personally or by entities other than any of his possible sole proprietorships as ordinary and necessary expenses," including "as a non-exhaustive example[,] . . . expenses for accounting services."  (Id. ¶¶ 159-60.)  The United States alleges that Mr. Pesky never operated a sole proprietorship that incurred the Schedule C expenses on his 2003 and 2004 tax returns, yet it asserts no factual allegations related to the Schedule C expenses, such as what "possible sole proprietorships" and entities are alleged to have be involved, what expenses were deducted, or what facts lead the United States to believe that Mr. Pesky did not operate a sole proprietorship. The United States has not included enough factual allegations to "nudge[] [its] claim[] across the line from conceivable to

13

plausible." Twombly, 550 U.S. at 547.[6]

Thus the court will dismiss the United States' counterclaim for civil penalties under § 6663 due to Mr. Pesky's allegedly fraudulent reporting of business expenses on his Schedule C forms.

Since this is the first motion to dismiss the United States' counterclaims, and the United States appears to be able to cure the deficiency, it will be granted leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'); Fed. R. Civ. P. 15(a).

IT IS THEREFORE ORDERED that the Peskys' motion to dismiss be, and the same hereby is:

(1) DENIED as to the United States' first counterclaim for a civil fraud penalty under 26 U.S.C. § 6663 due to Alan Pesky's alleged conservation easement fraud; and

(2) GRANTED as to the United States' second counterclaim for a civil fraud penalty under 26 U.S.C. § 6663 due to Alan Pesky's alleged Schedule C fraud.

The United States has twenty days from the date of this Order to file an Amended Counterclaim, if it can do so consistent

---

[6] A fortiori, if the heightened pleading standard of Rule 9(b) applies, the United States also fails to satisfy Rule 9(b)'s particularity requirement for its counterclaim alleging fraudulent reporting of Schedule C expenses.

14

with this Order.

DATED: January 7, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE